# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK KUNKEL,<br><br>    Plaintiff,<br><br>    v.<br><br>SHERRY LOPEZ, et al.,<br><br>    Defendants. | Case No.  1:11-cv-01026-SAB<br><br>ORDER SCREENING COMPLAINT AND DISMISSING PLAINTIFF'S CLAIMS, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM<br><br>ECF NO. 1 |

## I.

## INTRODUCTION

Plaintiff Patrick Kunkel ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the original complaint in this action on June 20, 2011.  (ECF No. 1.)

For the reasons set forth below, the Court finds that Plaintiff's complaint fails to state any cognizable claims.  The Court will dismiss Plaintiff's claims, with leave to amend.

## II.

## SCREENING

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

1 legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III.

### PLAINTIFF'S COMPLAINT

The events described in Plaintiff's complaint took place while he was incarcerated at Kern Valley State Prison ("KVSP") in Delano, California.[1]  Plaintiff names Sherry Lopez (chief medical officer/health care manager), I. Patel (doctor), A. Shittu (doctor), O. Rufino (licensed vocational nurse), S. Sakin-Kuehn (registered nurse), I. Grewal (licensed vocational nurse), E. Mercado (registered nurse), Erin Rousseau ("utilization management") and Jane Doe/John Doe

---

[1] The Court's records indicate that Plaintiff is currently incarcerated at California State Prison, Los Angeles County in Lancaster, California.

("utilization management") as defendants in this action (all defendants collectively referred to as "Defendants"). (Compl. ¶¶ 4-12.)

On August 20, 2009, Plaintiff received surgery on his ankle. (Compl. ¶ 14.) Plaintiff alleges that the surgery was unsuccessfully and Plaintiff's ankle became infected around September 2, 2009. (Compl. ¶ 14.) Plaintiff filed several requests for medical treatment. (Compl. ¶ 14.) Plaintiff was seen by medical staff but was denied treatment on September 15, 2009. (Compl. ¶ 14.)

### A.   Defendant S. Sakin-Kuehn

Between September 17, 2009 and September 21, 2009, Plaintiff filed five "sick call requests." (Compl. ¶ 15.) Plaintiff was seen by Defendant S. Sakin-Kuehn, a registered nurse, but was "denied treatment" because Plaintiff "would be seen by a[n] outside doctor and they can deal with it." (Compl. ¶ 15.) Plaintiff later learned that he had a medically resistant staph infection. (Compl. ¶ 16.) Plaintiff contends that Sakin-Kuehn "[knew] that to see a[n] outside doctor could take months yet still refused .... treatment." (Compl. ¶ 16.) Plaintiff eventually received IV antibiotic treatments that stopped the infection, but doctors told Plaintiff that the infection could come back at any time "due to the length Plaintiff had the infection." (Compl. ¶ 17.)

### B.   Defendant O. Rufino

Plaintiff alleges that Defendant O. Rufino was a licensed vocational nurse who distributed pills to Plaintiff's cell between August 20, 2009 and January 29, 2009. (Compl. ¶ 21.) Plaintiff further alleges that he showed Rufino the infected ankle "at least 10 to 15 times" but Rufino only told Plaintiff to file a sick call slip. (Compl. ¶ 21.) Plaintiff contends that Rufino should have told the registered nurse "that it looked serious ... so [Plaintiff] would be seen right away." (Compl. ¶ 21.)

### C.   Defendant Sherry Lopez

Plaintiff alleges that, after his ankle surgery on August 20, 2009, he was seen at U.C. Davis "via tela-med" on August 26, 2009 to remove additional hardware that could not be removed during the prior surgery. (Compl. ¶ 23.) Plaintiff further alleges that he was supposed

to receive x-rays and doctor's notes from the unsuccessful surgery on August 20, 2009. (Compl. ¶ 23.) Plaintiff did not receive the x-rays or doctor's notes until September 10, 2009 and September 15, 2009. (Compl. ¶ 24.) Plaintiff alleges that Defendant Sherry Lopez was in charge of "specialty consults" and making sure that "specialty appointments" are done within ninety days. (Compl. ¶ 25.) Plaintiff contends that his ankle became infected "because of delay in treatment caused by Sherry Lopez." (Compl. ¶ 26.) Plaintiff contends that, between September 22, 2009 and January 6, 2010, Defendant I. Patel told Lopez that Plaintiff's ankle was becoming worse and was not responding to antibiotics. (Compl. ¶ 27.)

Plaintiff further contends that his treatment was delayed because there was a contract dispute between KVSP and U.C. Davis. (Compl. ¶ 30.) Because Plaintiff could not be seen at U.C. Davis, he was instead taken to Pacific Orthopedics in Bakersfield on February 18, 2010, which was thirty days after his scheduled appointment at U.C. Davis. (Compl. ¶ 31.) During his visit at Pacific Orthopedics, a doctor told Plaintiff that he should be seen at U.C. Davis immediately and that "infectious disease control should be contacted." (Compl. ¶ 32.) Plaintiff was not taken to U.C. Davis, but instead taken back to Pacific Orthopedics on March 1, 2010. (Compl. ¶ 35.) Plaintiff contends that Lopez was deliberately indifferent by failing to make sure that he received treatment in a timely manner. (Compl. ¶ 37.)

### D.   Defendant A. Shittu

During his March 1, 2010 visit at Pacific Orthopedics, a doctor told Plaintiff that Defendant A. Shittu failed to inform Pacific Orthopedics that Plaintiff was seen at February 18, 2010 and that Plaintiff was supposed to be sent to U.C. Davis. (Compl. ¶ 39.) Plaintiff told the doctor at Pacific Orthopedics that KVSP had a contract dispute with U.C. Davis and that Plaintiff could not be seen there. (Compl. ¶ 40.) The doctor then made arrangements to send Plaintiff to Mercy Hospital in Bakersfield, and Plaintiff was scheduled for surgery on March 3, 2010. Compl. ¶ 41.) Plaintiff contends that Shittu "knowingly put Plaintiff ... at risk because of contract disputes with U.C. Davis, and knowingly went against the specialty consults orders of 2-18-10 and Dr. Akanno's order of 2-25-10 that Plaintiff be sent to U.C. Davis stat." (Compl. ¶ 42.)

### E. Defendant I. Patel

Plaintiff alleges that Defendant I. Patel gave Plaintiff antibiotics "over [and] over again even though they were not working." (Compl. ¶ 44.) Plaintiff contends that Patel did not "draw blood, do a culture, anything to test what kind of infection Plaintiff had." (Compl. ¶ 44.) Plaintiff contends that Patel's "failure to do a culture caused Plaintiff 6 months of pain and suffering." (Compl. ¶ 45.)

### F. Defendants E. Mercada and Erin Rousseau

Plaintiff alleges that Defendants E. Mercada and Erin Rousseau worked as "utilization management for the specialty clinic." (Compl. ¶ 52.) Plaintiff contends that it was Mercado and Rousseau's job to make sure Plaintiff was seen in a timely manner and to ensure Plaintiff's treatment plan followed CDCR policies. (Compl. ¶ 53.) Plaintiff contends that Mercado and Rousseau "failed in their job because of the extreme delay in treatment which put Plaintiff's life in grave danger." (Compl. ¶ 54.)

### G. Defendant I. Grewal

Plaintiff alleges that Defendant I. Grewal was a licensed vocational nurse and appeals analyst who responded to Plaintiff's September 21, 2009 inmate appeal regarding his infected ankle. (Compl. ¶¶ 56-57.) Plaintiff contends that Grewal "refused to interview Plaintiff's witnesses to prove staff were deliberately indifferent, which caused Plaintiff's condition to worsen..." (Compl. ¶ 58.) Plaintiff filed another appeal on February 21, 2010 about his infected ankle. (Compl. ¶ 60.)

## IV.

## DISCUSSION

### A. Eighth Amendment Claims

Plaintiff contends that Defendants violated his rights under the Eighth Amendment against cruel and unusual punishment. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must

be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations omitted). Second, "a prison official must have a 'sufficiently culpable state of mind.' [Citations.] In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. A prison official acts with "deliberate indifference" if:

> the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837.

"'Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992)). In order to rise to the level of deliberate indifference, plaintiff must allege "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "[A] mere 'difference of medical opinion ... [is] insufficient, as a matter of law, to establish deliberate indifference.'" Id. at 1058 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's health.'" Id. (quoting Jackson, 90 F.3d at 332).

Plaintiff fails to allege facts that plausibly support the conclusion that Defendant S. Sakin-Kuehn acted with deliberate indifference. Plaintiff alleges that Sakin-Kuehn "denied treatment," but fails to allege any specific treatment that Sakin-Kuehn, a registered nurse, could have or should have administered. Moreover, Plaintiff alleges that Sakin-Kuehn told Plaintiff that he would be seen by an outside doctor, which does not support the conclusion that Sakin-Kuehn purposefully failed to respond to Plaintiff's medical needs.

For similar reasons, Plaintiff fails to allege facts that plausibly support the conclusion that Defendant O. Rufino acted with deliberate indifference. Plaintiff alleges that Rufino should have told the registered nurse that Plaintiff's ankle "looked serious," but Plaintiff also alleges that he

filed numerous inmate appeals and requests for treatment. Accordingly, Rufino's failure to report to the registered nurse did not cause or contribute to any delay in treatment because, accordingly to Plaintiff's allegations, Plaintiff's condition was well-known by medical personnel at KVSP. Plaintiff fails to identify any treatment that Rufino, a licensed vocational nurse, could have or should have administered. Plaintiff alleges that Rufino told Plaintiff to report his injury through the proper channels (via a sick call slip) and Plaintiff fails to allege any facts that suggest that this response was deliberately indifferent.

Plaintiff fails to allege facts that show that Defendant Sherry Lopez acted with deliberate indifference. Plaintiff alleges that Lopez was the chief medical officer and was generally responsible for supervision over the medical department at KVSP, such as ensuring that "specialty appointments" were performed on time. However, Plaintiff fails to allege any facts that support the conclusion that Lopez was personally involved in Plaintiff's medical treatment. Plaintiff does not allege that Lopez ever physically saw Plaintiff. Plaintiff alleges that Defendant I. Patel informed Lopez that Plaintiff's ankle was not responding to antibiotics and needed urgent care, but that allegation does not support the conclusion that Lopez was aware that Plaintiff's treatment would be further delayed or that Plaintiff was otherwise at risk.[2] Further, Plaintiff fails to allege any facts that support his contention that Lopez caused or contributed to any delay in Plaintiff's treatment. Plaintiff fails to allege any specific acts by Lopez that caused or contributed to any delay. Plaintiff vaguely alludes to a contract dispute between KVSP and U.C. Davis, but fails to explain how Lopez was responsible for the contract dispute.

Plaintiff fails to allege facts that demonstrate that Defendant A. Shittu acted with deliberate indifference. Plaintiff alleges that a doctor at Pacific Orthopedics told Plaintiff that Shittu failed to inform Pacific Orthopedics about Plaintiff's February 18, 2010 clinic visit and that Plaintiff was supposed to be seen at U.C. Davis. However, even if true, there is no suggestion that Shittu's actions caused or contributed to any delay in Plaintiff's treatment. Plaintiff contends that Shittu knowingly put Plaintiff at risk because of the contract dispute with

---

[2] Moreover, the exhibits cited by Plaintiff in support of his allegation that Patel informed Lopez about Plaintiff's condition do not support Plaintiff's allegation. The exhibits consist of treatment notes bearing Patel's name, but provide no indication that these notes or the information contained therein were ever forwarded to Lopez.

U.C. Davis and by going against specialty consult orders, but fails to explain how Shittu was responsible for the contract dispute or explain how Shittu "went against" any doctor's order.

Plaintiff fails to allege that Defendant I. Patel acted with deliberate indifference. Plaintiff alleges that Patel provided Plaintiff with antibiotics even though they were not working and failed to perform tests for Plaintiff's infection. However, Plaintiff fails to explain how the failure to perform tests caused or contributed to any delay in Plaintiff's treatment. According to Plaintiff's allegations, Plaintiff's ankle was so swollen and red, "it looked serious" and even the nurses "knew a huge problem existed." (Compl. ¶ 21.) Accordingly, taking Plaintiff's allegations as true, the failure to test or diagnose the ankle was not the problem. The issue at the crux of Plaintiff's complaint is the delay in seeing an outside doctor to get treatment caused by a contract dispute, not the delay in testing or diagnosing Plaintiff's injury. Plaintiff does not allege any facts that suggest that Plaintiff would have been seen by an outside doctor faster if Patel performed tests or cultures of Plaintiff's ankle. Plaintiff does not allege any facts that suggest that Patel caused or contributed to the delay in seeing an outside doctor.

Plaintiff fails to allege that Defendants E. Mercada or Erin Rousseau acted with deliberate indifference. Plaintiff vaguely alleges that Mercada and Rousseau worked in "utilization management" and were generally responsible for ensuring that patients were seen in a timely manner. However, Plaintiff does not allege any facts that plausibly support the conclusion that Mercada or Rousseau were specifically aware of Plaintiff's situation. Further, Plaintiff does not identify any specific actions by Mercada or Rousseau that caused or contributed to any delay in Plaintiff's treatment. Plaintiff vaguely alleges that Mercada and Rousseau "failed in their job," but Plaintiff fails to specifically identify how Mercada or Rousseau "failed in their job." (Compl. ¶ 54.)

Plaintiff fails to allege that Defendant I. Grewal acted with deliberate indifference. Plaintiff does not identify any specific action or treatment that Grewal should have undertaken. Plaintiff contends that Grewal did not interview Plaintiff's witnesses, but fails to explain how that caused or contributed to any delays or how that caused Plaintiff's condition to worsen. Again, the crux of Plaintiff's complaint is that his treatment was delayed due to contract

disputes, but Plaintiff does not allege any facts that show that Grewal caused, contributed or participated in any way in those contract disputes. Plaintiff does not allege what Grewal could have done to expedite Plaintiff's treatment.

As discussed above, Plaintiff's chief complaint appears to arise from delays in his treatment caused by a contract dispute between KVSP and U.C. Davis. However, Plaintiff fails to allege facts that demonstrate that the individuals named as defendants in this action caused or contributed to the contract disputes or the delays in treatment in a deliberately indifferent manner. Plaintiff fails to identify any discrete action or inaction by Defendants that rises to the level of deliberate indifference. Accordingly, Plaintiff fails to state any cognizable claims under the Eighth Amendment.

### B. Fourteenth Amendment Claims

Plaintiff contends that Defendants violated the Fourteenth Amendment by failing to provide sufficient medical care. However, where another amendment "provides an explicit textual source of constitutional protection" against the alleged governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [those] claims." Graham v. Connor, 490 U.S. 386, 395 (1989). In this case, the Eighth Amendment provides a more explicit textual source of constitutional protection against Plaintiff's allegations of inadequate medical treatment. Accordingly, Plaintiff's claims will only be analyzed under the Eighth Amendment and Plaintiff cannot state a separate claim under the Due Process clause of the Fifth Amendment.

### C. Claims for Injunctive Relief

Plaintiff's complaint seeks equitable relief in the form of a preliminary and permanent injunction. However, the Court's records indicate that Plaintiff is no longer incarcerated at KVSP and therefore is no longer subjected to the allegedly unconstitutional conditions of confinement alleged in his complaint. "[W]hen a prisoner is moved from a prison, his action [for injunctive relief] will usually become moot as to conditions at that particular facility." Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001). Since Plaintiff is no longer subjected to the allegedly unconstitutional conditions of confinement, any request for injunctive or declaratory relief would

be moot.  Therefore, Plaintiff's complaint does not state any cognizable claims for injunctive relief.

## V.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Plaintiff's complaint fails to state any cognizable claims.  Plaintiff is granted leave to file an amended complaint within thirty days.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights.  Iqbal, 556 U.S. at 678.  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Plaintiff's complaint, dated March 18, 2011, is dismissed for failure to state a claim upon which relief may be granted;
3. If Plaintiff wishes to amend, he must file an amended complaint within **thirty (30) days** from the date of service of this order; and

/ / /

/ / /

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated: **August 23, 2013**

UNITED STATES MAGISTRATE JUDGE