# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK KUNKEL,<br><br>  Plaintiff,<br><br>  v.<br><br>SHERRY LOPEZ, et al.,<br><br>  Defendants. | Case No. 1:11-cv-01026-SAB<br><br>ORDER SCREENING FIRST AMENDED COMPLAINT AND DISMISSING CLAIMS WITHOUT LEAVE TO AMEND<br><br>ECF NO. 12 |

**I.**

**INTRODUCTION**

Plaintiff Patrick Kunkel ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this action pursuant to 42 U.S.C. § 1983. Plaintiff filed the original complaint in this action on June 20, 2011. (ECF No. 1.) On August 23, 2013, the Court screened Plaintiff's original complaint and dismissed it with leave to amend. (ECF No. 11.) Plaintiff filed the First Amended Complaint on September 24, 2013. (ECF No. 12.)

Plaintiff has consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF No. 7.) For the reasons set forth below, the Court finds that Plaintiff's First Amended Complaint fails to state any cognizable claims.

/ / /

/ / /

1

## II.

## SCREENING

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

/ / /

/ / /

/ / /

/ / /

## III.

## PLAINTIFF'S COMPLAINT

The events described in Plaintiff's complaint took place while he was incarcerated at Kern Valley State Prison ("KVSP") in Delano, California.[1] Plaintiff names Sherry Lopez (chief medical officer), I. Patel (doctor), A. Shittu (doctor), O. Rufino (licensed vocational nurse), S. Sakin-Kuehn (registered nurse), I. Grewal (licensed vocational nurse), E. Mercado (supervising registered nurse), Erin Rousseau (specialty clinic registered nurse), Moonga (registered nurse), Ariach (nurse practitioner), and John/Jane Doe #1-7 as defendants in this action (all defendants collectively referred to as "Defendants").

Plaintiff alleges that Defendants violated the Eighth Amendment by their deliberate indifference toward Plaintiff's medical needs. Plaintiff alleges that he had a plate in his ankle that caused him severe pain, and underwent two unsuccessful surgeries to remove the plate, which only caused the screws in the plate to become stripped. Plaintiff further alleges that, after the second surgery, Plaintiff got a medically resistant staph infection. (First Am. Compl. ¶ 26.) Plaintiff alleges that his staph infection eventually "got into Plaintiff's bone causing osteomyelitis." (First Am. Compl. ¶ 27.)

Plaintiff received his second surgery to remove the plate in his ankle on August 20, 2009. (First Am. Compl. ¶ 35.) On August 26, 2009, Plaintiff was seen by someone at U.C. Davis "via telamed" who requested Plaintiff's operation notes and an x-ray. (First Am. Compl. ¶ 37.)

On September 2, 2009, Plaintiff informed medical staff that the swelling in his ankle was getting worse. (First Am. Compl. ¶ 39.) Plaintiff filled out a "sick call slip" and gave it to Defendant Rufino, and also showed Rufino the swollen ankle. (First Am. Compl. ¶ 43.)

On September 3, 2009, Defendant Moonga falsely stated that Plaintiff refused to come to the clinic. (First Am. Compl. ¶ 44.) Plaintiff was instead seen on September 15. (First Am. Compl. ¶ 44.) Plaintiff contends that he has never refused treatment. (First Am. Compl. ¶ 45.)

///

---

[1] The Court's records indicate that Plaintiff is currently incarcerated at California State Prison, Los Angeles County in Lancaster, California.

3

1    On September 15, 2009, Plaintiff was seen by Defendant Ariach.  (First Am. Compl. ¶
2 50.)  Plaintiff contends that Ariach refused treatment, and instead told Plaintiff that he had an
3 outstanding referral to U.C. Davis, and "they can deal with it."  (First Am. Compl. ¶ 51.)
4 Plaintiff contends that Ariach refused treatment due to prior complaints Plaintiff had filed against
5 her.  (First Am. Compl. ¶ 52.)

6    On September 17, 2009, Plaintiff was seen by Defendant Sakin-Kuehn.  (First Am.
7 Compl. ¶ 55.)  Sakin-Kuehn did not provide any treatment.  (First Am. Compl. ¶ 56.)  On
8 September 20, 2009, Sakin-Kuehn spoke with Ariach and again did not provide Plaintiff with
9 any treatment.  (First Am. Compl. ¶ 60.)  In response to Plaintiff's medical slips, Sakin-Kuehn
10 wrote that Plaintiff was informed several times that he was scheduled to be seen outside the
11 prison for treatment.  (First Am. Compl. ¶ 62.)

12    On September 22, 2009, Plaintiff was seen by Defendant Patel.  (First Am. Compl. ¶ 74.)
13 Plaintiff was given antibiotics.  (First Am. Compl. ¶ 74.)  Plaintiff saw Patel again on October 6,
14 2009, and Patel told Plaintiff that he contacted the specialty clinic regarding Plaintiff's referral to
15 U.C. Davis.  (First Am. Compl. ¶ 75.)  On October 19, 2009, Plaintiff was seen by a registered
16 nurse and given more antibiotics.  (First Am. Compl. 77.)

17    On November 19, 2009, Plaintiff was seen by Patel and told that his referral to U.C.
18 Davis was scheduled for the second week of December.  (First Am. Compl. ¶ 80.)  On December
19 2, 2009, Plaintiff was seen by Patel and given more antibiotics.  (First Am. Compl. ¶ 81.)  On
20 December 16, 2009, Plaintiff was seen by Patel, who noted that Plaintiff suffered from a
21 "chronic untreatable infection," and given more antibiotics.  (First Am. Compl. ¶ 84.)  Plaintiff
22 was also told that his U.C. Davis appointment was "cancelled due to contract disputes" and that
23 the registered nurse would "call to Sacramento to find out status."  (First Am. Compl. ¶ 84.)  On
24 December 24, 2009, Patel indicated that Plaintiff was scheduled for an appointment at U.C.
25 Davis on January 6, 2010.  (First Am. Compl. ¶ 88.)

26    On January 6, 2010, Plaintiff was seen by someone at U.C. Davis "via telamed."  (First
27 Am. Compl. ¶ 89.)  The treatment notes indicate that Plaintiff should continue his antibiotics and
28 be seen at the medical center at the next earliest date for consideration for hardware removal and

drainage of the infected area. (First Am. Compl. ¶ 89.) On January 19, 2010, Plaintiff was seen by Patel, who recommended removal of the plate and submitted an "Urgent Physician Request for Services for to Special Clinic." (First Am. Compl. ¶ 94.)

On January 20, 2010, Patel's request was approved. (First Am. Compl. ¶ 99.) On February 9, 2010, Defendant Shittu cancelled Plaintiff's request for services and called Colonial Medical Group and spoke to Dr. Paik about the hardware removal procedure. (First Am. Compl. ¶ 99.) Plaintiff alleges that Shittu dismissed Patel's recommendations without examining Plaintiff. (First Am. Compl. ¶ 100.)

On February 18, 2010, Plaintiff was sent to Pacific Orthopedic Medical Group and was seen by Dr. Marshall Lewis. (First Am. Compl. ¶ 103.) On February 25, 2010, Plaintiff was seen by Dr. Akanno and referred again to U.C. Davis. (First Am. Compl. ¶ 107.)

On March 1, 2010, Plaintiff was seen by a specialist at Pacific Orthopedic. (First Am. Compl. ¶ 108.) Plaintiff contends that Shittu should have sent Plaintiff to U.C. Davis. (First Am. Compl. ¶ 108.) Plaintiff was seen by Dr. Paik, who was not told about Plaintiff's infection. (First Am. Compl. ¶ 109.)

On March 3, 2010, Plaintiff was sent to a hospital for removal of the plate and for treatment for his infection. (First Am. Compl. ¶ 112.) Plaintiff was told that there was "some erosion of distal fibula ... [which] was due to infection eating the bone." (First Am. Compl. ¶ 113.)

Between August 2009 and January 2010, Plaintiff also showed his ankle to Defendant O. Rufino, who told Plaintiff that "it wasn't his job to inform medical of plaintiff's serious medical problems, and to file a sick call slip." (First Am. Compl. ¶ 123.) Plaintiff contends that Rufino should have done more to help Plaintiff. (First Am. Compl. ¶ 125.)

Plaintiff alleges that Defendant Lopez, Mercada, and other unknown Doe defendants responsible for ensuring that Plaintiff's medical appointments are scheduled properly, acted with deliberate indifference toward Plaintiff's medical condition. (First Am. Compl. ¶¶ 128-174.) Plaintiff contends that Lopez did not follow the orders and recommendations of his specialists because of budget or contract disputes. (First Am. Compl. ¶ 157.) Plaintiff alleges that

Defendant I. Grewal reviewed Plaintiff's inmate appeals and acted with deliberate indifference by denying the appeals. (First Am. Compl. ¶ 175-183.)

## IV.

## DISCUSSION

### A.    Eighth Amendment Claims

Plaintiff contends that Defendants violated his rights under the Eighth Amendment, which prohibits cruel and unusual punishment. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations omitted). Second, "a prison official must have a 'sufficiently culpable state of mind.' [Citations.] In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. A prison official acts with "deliberate indifference" if:

> the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837.

"'Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992)). In order to rise to the level of deliberate indifference, plaintiff must allege "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "[A] mere 'difference of medical opinion ... [is] insufficient, as a matter of law, to establish deliberate indifference.'" Id. at 1058 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of

6

1  treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious
2  disregard of an excessive risk to [the prisoner's health.'" Id. (quoting Jackson, 90 F.3d at 332).

3       Plaintiff fails to allege facts that plausibly support the conclusion that Defendants acted
4  with deliberate indifference.  Plaintiff's allegations demonstrate that, after the second
5  unsuccessful surgery, Plaintiff was seen by nurses and doctors nearly every week and given
6  antibiotics.  Although Plaintiff repeatedly alleges that he did not receive any treatment for the
7  infection, this allegation is contradicted by his allegations detailing his treatment history.

8       Plaintiff does contend that his appointments with outside specialists were delayed.
9  However, even if the treatment he received from specialists outside the prison was better than the
10 treatment from the nurses and doctors in the prison, Plaintiff fails to allege facts that demonstrate
11 that Defendants acted with deliberate indifference.  Plaintiff does not allege that any individual
12 Defendant took action to delay his appointments or that any individual Defendant chose a
13 particular course of treatment in conscious disregard to an excessive risk to Plaintiff's serious
14 medical needs.  Plaintiff does not identify any specific type of treatment that he should have
15 received that Defendants withheld.  Plaintiff alleges that one doctor characterized Plaintiff's
16 infection as "untreatable," suggesting that the pain Plaintiff endured was unavoidable.  (First
17 Am. Compl. ¶ 84.)  Plaintiff has not alleged any facts that plausibly support the conclusion that
18 Defendants purposefully chose a course of treatment that subjected Plaintiff to such pain.

19      Plaintiff alleges that his appointments with specialists were cancelled or delayed due to
20 contract disputes and budget cuts.  However, Plaintiff fails to allege any facts that plausibly
21 support the conclusion that these contract disputes or budget cuts were made by any individual
22 named as a Defendant in this action or that those actions were purposefully taken with conscious
23 disregard to an excessive risk to Plaintiff's medical condition.

24      Based upon the foregoing, the Court finds that Plaintiff's allegations do not rise to the
25 level of an Eighth Amendment violation.

26      **B.**    **Fourteenth Amendment Claims**

27      Plaintiff contends that Defendants violated the Fourteenth Amendment by failing to
28 provide sufficient medical care.  However, where another amendment "provides an explicit

textual source of constitutional protection" against the alleged governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [those] claims." Graham v. Connor, 490 U.S. 386, 395 (1989). In this case, the Eighth Amendment provides a more explicit textual source of constitutional protection against Plaintiff's allegations of inadequate medical treatment. Accordingly, Plaintiff's claims will only be analyzed under the Eighth Amendment and Plaintiff cannot state a separate claim under the Due Process clause of the Fifth Amendment.

### C. Dismissal Without Leave to Amend

Generally, leave to amend a dismissed complaint should be granted if it appears at all possible that the plaintiff can correct the defects in the complaint. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). However, leave to amend may be denied when a plaintiff was previously notified of the deficiencies in his claims but did not cure them. See Chodos v. West Publishing Co., 292 F.3d 992, 1003 (9th Cir. 2002).

Here, Plaintiff was previously informed of the deficiencies in his claims and his First Amended Complaint failed to cure them. Accordingly, the Court will dismiss Plaintiff's First Amended Complaint without leave to amend.

## V.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Plaintiff's First Amended Complaint fails to state any cognizable claims. Moreover, the Court finds that leave to amend should be denied because Plaintiff's claims cannot be cured by granting further leave to amend.

Accordingly, it is HEREBY ORDERED that Plaintiff's First Amended Complaint be DISMISSED, without leave to amend. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **January 24, 2014**

UNITED STATES MAGISTRATE JUDGE